In re Estate of George F. Wallace, Deceased.
Lois Stadt, Administratrix, Plaintiff in Error, v. Frances Elizabeth Wallace, Defendant in Error.

Gen. No. 8,392.

Opin-
ion filed February 18, 1932.

GOWER, GRAY & GOWER and V. A. PARISH, for plaintiff in error.

FRANK J. BURNS and JAMES T. BURNS, for defendant in error.

MR. JUSTICE WOLFE delivered the opinion of the court.

It appears from the record in this case that George F. Wallace during his lifetime became the owner of ten United States treasury savings certificates. The certificates are dated July 10, 1922, and each certify that, subject to the terms and conditions expressed thereon, George F. Wallace, five years from date of issue of the certificates, will be entitled to receive the sum of $100, or, at his option, upon presentation prior to maturity, the lesser amount indicated in the table appearing on the back of the certificates. Among the terms and conditions contained in the certificates are the following:

"Payment of this certificate will be made upon presentation and surrender hereof, by mail or otherwise, at the office of the Secretary of the Treasury, Division of Loans and Currency, Washington, provided the form of demand for payment, appearing on the back hereof, shall be properly signed by the registered owner, in the presence of, and duly certified by,

an executive officer of an incorporated bank or Trust Company, or any other person designated by the Secretary of the Treasury for the purpose. In case of the death or disability of the registered owner, a special form of demand for payment prescribed by the Secretary of the Treasury must be executed. This certificate is not valid unless the owner's name and address and the date of issue are duly inscribed hereon by an authorized agent at the time of issue hereof. This certificate is not transferable, and is payable only to the owner except in case of death or disability of such owner and in such case is payable as provided in regulations prescribed by the Secretary of the Treasury.''

The certificates also state that provision has been made for registration of the owner's name and address on the books of the treasury department at Washington. Above the signature of the Secretary of the Treasury appears the words, ''Not Transferable.'' On September 25, 1922, George F. Wallace signed the demands for payment appearing on the back of the certificates, and his signature thereto was certified to by the cashier of the Momence State and Savings Bank of Momence, Illinois.

It is conceded by the parties that sometime in the fall of 1923, Mr. Wallace presented all of the certificates to his wife, Frances Elizabeth Wallace, under such facts and circumstances as to effect a valid and complete gift of the certificates to her unless the terms and conditions expressed in the certificates have the legal effect of prohibiting or restraining the transfer of the title to the certificates, and the right to the proceeds thereof by gift.

There is also the contention by the defendants in error that if the transfer of the title to the certificates by gift is prohibited by the terms of the certificates, still there was an equitable assignment thereof by the

gift which operated to give Mrs. Wallace a title which equity will recognize and protect. This contention of the defendant, we think, is disposed of by the maxim that "equity follows the law." "Whenever the rights or the situation of parties are clearly defined and established by law, equity has no power to change or unsettle those rights or that situation, but in all such instances the maxim 'Aequitas sequitur legem' is strictly applicable." (*Magniac v. Thompson,* 15 How. [U. S.] 281, 14 L. Ed. 696.) It therefore follows that if the transfer of the title to the certificates is in a lawful manner prohibited by the terms thereof, equity cannot lend its aid in effect to transfer the ownership of the certificates, or the proceeds thereof, in contravention of the prohibition. An assignment of a contract in express violation of its positive provisions, is void, and the party claiming through such assignment, is entitled to no relief in equity. (*Grigg v. Landis,* 19 N. J. Eq. 350.)

Mr. Wallace died October 27, 1923, and upon a hearing on a petition to discover assets of his estate prosecuted by the administrator, the circuit court of Kankakee county, on appeal from the county court, found, "That said certificates are the property of said Frances Elizabeth Wallace by virtue of a legal transfer thereof by said George F. Wallace during his life time to the said Frances Elizabeth Wallace, and that said Frances Elizabeth Wallace has title to and is the owner of said certificates." The question presented to this court is: Did George F. Wallace have title to the certificates at the time of his death?

The terms and conditions of the certificates above quoted, were prescribed and embodied in the certificates by the secretary of the treasury of the United States. That he had the power to insert such terms and conditions in the certificates under the provisions of the Act of Congress of September 24, 1917, sec. 6,

as amended by Act of September 24, 1918, sec. 2
(31 USCA Sec. 757); 31 USCA sec. 762, has been held
in the cases of *Brown v. White,* 24 F. (2d) 392;
*United States v. Sacks,* 257 U. S. 37, 66 L. Ed. 118;
*United States v. Janowitz,* 257 U. S. 42, 66 L. Ed. 120;
*Mandelbaum v. United States,* 270 U. S. 7, 70 L. Ed.
448.

In the case of *United States v. Janowitz, supra,* the
defendants were indicted for conspiracy to defraud the
United States. The district court sustained a de-
murrer to the indictment which charged in the first
count that defendants purchased from persons not
authorized by the secretary of the treasury to sell the
same, a quantity of war savings certificates of the
series of 1918 and 1919, with savings certificate stamps
affixed thereto, and that the defendants well knew that
the certificates and stamps were not transferable, were
worthless in their hands, and could not be redeemed by
them at or prior to maturity dates thereof, and were
not payable to anyone save one who had purchased
them from an authorized agent of the United States,
and to a person whose name was written on them at
the time of issue and purchase. That they conspired
to obtain them for themselves from the United States
prior to the maturity date of the certificates and
stamps, knowing that they were not entitled thereto,
and that the United States was not obligated to pay
them, and thereby defraud the United States. The
Supreme Court reversed the ruling of the judge of the
district court sustaining a demurrer to the indictment
on this proposition that, "A stamp is a thing of value,
bought and paid for, and to deprive it of the quality of
assignment is a diminution of lawfully existing prop-
erty rights, for which, in my judgment, congressional
action alone will suffice." The Supreme Court held
that the secretary of the treasury had the power to
make the certificates nontransferable and the defend-

ants had no right to purchase or alienate or sell them, and, if done with intent to defraud the government, was unlawful.

In the case of *United States v. Sacks, supra,* the Supreme Court held that the removal of a war savings certificate stamp from a war savings certificate, which certificate was of no value except to the person whose name appeared thereon, and not transferable, was an alteration of an obligation of the government.

In the case of *Mandelbaum v. United States, supra,* it was held that a condition in a war savings certificate, which certificate became valid when war savings certificate stamps were attached thereto, that unless registered the United States would not be liable for payment to one not the registered owner, limited the obligation of the government to pay; and that the government is not liable to one from whom unregistered certificates have been stolen, for their value, although he offers to give a sufficient bond of indemnity.

In *Warren v. United States,* 68 Court of Claims Reports, page 634 (certiorari denied, 50 Sup. Ct. 346, 281 U. S. 739, 74 L. Ed. 1154), an executrix claimed the right to recover money represented by certain treasury savings certificates as against the registered owner thereof. The claim of the executrix was based on the contention that the certificates had never been delivered to the registered owner, but always remained in the possession of the testator; that the question as to title and ownership of the certificates and the proceeds thereof, was controlled by the laws of the State of Texas and not by the rules and regulations of the United States treasury department. The court of claims held that the suit was on the contract between the testator and the United States and that the contract legally provided that the certificates were payable to the beneficiaries named therein. The secretary of the treasury refused to pay the certificates to

the executrix. The court of claims held that the terms of the certificates and the regulations of the secretary promulgated before the purchase of the certificates constituted the contract sued on. And the court decided, ''The Secretary of the Treasury, in effect, said to the plaintiff that under the contract 'the money is payable to the beneficiary and not to you, and I refuse to pay it to you.' We are of the opinion that in so doing he was acting in conformity with the provisions of the contract.''

The certificates in question limited the obligation of the government to pay the amounts of the certificates to the registered owner thereof upon his written demand. Ownership and collectability of the certificates were dependent upon the condition that the name of the owner thereof be written thereon by an authorized agent of the government at the time of purchase. These terms and conditions of the certificates the Supreme Court of the United States has held are valid. That it was the purpose and intent of the government not to make these certificates negotiable instruments under the Negotiable Instruments Acts of the various States of the Union, is apparent from the terms of the certificates. The only obligation of the certificates is the promise to pay under certain conditions, and this obligation is made not transferable by the terms of the certificates. Unless contrary to law or public policy, an obligation to pay money which by its terms is made payable to a designated person only, and made nontransferable, negatives any promise of the obligor, otherwise implied, that payment would be made to an assignee or a transferee. The transferability of the paper is destroyed by the consent of the original parties to it. *Tabler, Crudup & Co. v. Sheffield Land, Iron & Coal Co.*, 79 Ala. 377, 58 Am. Rep. 593; *Barringer v. Bes Line Const. Co.*, 23 Okla. 131, 99 Pac. 775, 21 L. R. A. (N. S.) 597.

The nontransferability of the certificates was a protection and a security for both the government and the registered owner thereof, and this court has no power to waive this benefit on behalf of the government. We must, therefore, necessarily hold that George F. Wallace could not transfer the ownership of said certificates by gift thereof, and that Mrs. Wallace is not entitled to the proceeds thereof, her title to said certificates being dependent upon her ownership thereof. The obligation of the government to pay the amounts of the certificates being limited to paying George F. Wallace, no title to the certificates, or right to proceeds thereof, passed by a manual delivery of the certificates with the intent to make a gift of the certificates, or the amounts.

The judgment of the circuit court of Kankakee county is reversed and the cause remanded to that court with direction to enter an order and judgment in the case consistent with the views herein expressed.

*Reversed and remanded with directions.*