In the Matter of the Estate of WILLIAM F. OWENS, Deceased.

Surrogate's Court, New York County, December 24, 1941.

*Oswald M. Murphy,* for the petitioners.

*John I. Hennessey,* for the respondent.

*Joseph P. Brennan,* special guardian.

FOLEY, S. In this proceeding brought pursuant to the provisions of section 206-a of the Surrogate's Court Act, petitioners seek the delivery to them of certain United States savings bonds now in the possession of the executor. The evidence shows that the decedent purchased $4,750 of such bonds and procured them to be registered in the name of one petitioner, Francis Owens, his nephew. He likewise purchased an additional amount of bonds in the sum

of $4,775, which were registered in the name of his nephew, Edwin G. Owens, the copetitioner.

The oral and documentary evidence shows conclusively the effectuation of valid gifts of these securities to the respective petitioners. The original transactions took place in the month of July, 1935. After issuance, the bonds were delivered to the petitioners and remained in the possession of one or both of them until June, 1940. Upon the insistence of the decedent they were then placed in his custody, where they remained until his death. Subsequently they were taken over as assets of the estate by the executor. It is undisputed that the delivery to the decedent was not a sale of the securities. No change in the form of the registration of the bonds has been made.

The main question presented for determination was whether the petitioners had made an absolute surrender of title to these bonds in June, 1940, when they delivered them to the decedent, or whether the transfer was simply one giving possession and custody without relinquishment of ownership. As a phase of that question, contention was made by the petitioners that United States savings bonds of the type here involved cannot be made the subject of any form of voluntary transfer by way of gift.

Entirely aside from the question as to whether the bonds may be made the subject of voluntary transference, the surrogate finds upon the evidence that the petitioners did not part with title to the bonds in 1940, and that their placement with the decedent was a mere custody. Title remained in them until and beyond the decedent's death and their right to the possession of the bonds may now be enforced by a direction to the executor to turn them over.

Moreover, the surrogate holds that under the form of the bond and the regulations of the Treasury Department of the United States, through the Secretary of the Treasury, it can never be made the subject of a voluntary transfer by way of gift or sale or pledge.

The question seems to be a novel one since the research of counsel and of the surrogate has failed to reveal any reported authority dealing with these specific bonds. They are known as Series A bonds, and are commonly referred to as " Baby Bonds." They were authorized by the Second Liberty Loan Act, approved September 24, 1917, as amended. On their face they carry the statement that they were " issued pursuant to Treasuty Department Circular No. 529, dated February 25, 1935, to which reference is made for a statement of the right of holders, as fully and with the same effect as though herein set forth." It is also significantly stated that the " bond is not transferable." It is payable, at

maturity or on earlier redemption, " only to the registered owner," in accordance with the provisions of the circular above referred to " and the regulations prescribed from time to time thereunder." The owner's name and address are required to be set forth.

The public policy surrounding the issuance and retention of these securities is clearly revealed in the form and regulations originally made, and in the amendments subsequently issued. Unlike other governmental bonds, interest upon them is not currently paid, but accumulates until the date of maturity or an earlier authorized date of payment. They are thus of a character and purpose which might be described as thrift or savings securities. The purpose of the government to restrict ownership and to prohibit transfers is, therefore, clear.

The original circular of February 25, 1935, stated that the Treasury Department reserved the right to treat as conclusive the ownership in the bond. It was expressly stated that the bonds are not transferable and are payable only to the owner named thereon, except in the case of his death or disability. In a section of the circular dealing with creditors' rights, provision was made for the determination by judgment or decree of a court of competent jurisdiction for a transfer by operation of law  Although no express mention was made, these provisions plainly contemplated proceedings involving the bankruptcy of the registered owner or assignments for the benefit of his creditors. An exception, however, was made which precluded any decree or determination of a court upon an action or proceeding instituted for the purpose of giving effect to " an attempted transfer by the owner."

The regulations contained in the original circular were enlarged under the rights reserved by the Treasury Department. (Regulations, U. S. Savings Bonds, February 25, 1935; December 15, 1938; January 18, 1940; March 27, 1940.) The prohibition against voluntary transfer was continued in them. Transfers by operation of law on the death of the owner, or in the event of his disability or incompetency and in proceedings involving insolvency, were recognized. In the latter group of cases authority was granted for the redemption of the bond by the Treasury Department. The pledge of the bonds as collateral for a private loan or their deposit to secure the performance of an obligation was prohibited. Permission to borrow upon it was confined to a pledge by the registered owner with the Secretary of the Treasury. In the last of the series of the regulations (March 27, 1940) the mandate was repeated that no judicial proceeding which would give effect " to an attempted voluntary transfer of the bond " would be recognized.

The surrogate holds that such a bond cannot be the subject of a gift. In *Matter of Ballard* (161 Misc. 785) I had occasion to consider the effect of substantially similar governmental prohibitions against the transfer of Adjusted Service Bonds of 1945, commonly known as " Veterans' Bonus Bonds." I held that they could not be given by the owner to an alleged donee, either *inter vivos* or *causa mortis*, even though the usual requisites of a valid gift for other forms of securities had been proved.

The attempt of the testator in the ninth and tenth paragraphs of his will to restrict the petitioners in the enjoyment of the securities and the directions for the payment of income in the form of a trust and the remainder dispositions, were futile, ineffective and void.

Submit decree on notice directing the delivery of the bonds by the executor to the petitioners accordingly.