# NELSON, Appellant, *v.* WHEELER, Respondent.

No. 9150.

Submitted January 15, 1953.   Decided April 30, 1953.

Rehearing Denied May 25, 1953.

256 Pac. (2d) 1080.

Messrs. Sanders, Cresap & Koch, Sidney, for appellant.

Mr. H. G. Young, Forsyth, Mr. James F. Walsh, Seattle, Wash., for respondent.

Mr. C. T. Sanders and Mr. Young argued orally.

MR. JUSTICE BOTTOMLY:

This is an appeal by Axel Nelson, executor, from a judgment dated March 21, 1951, and filed March 27, 1951, in favor of defendant, Howard S. Wheeler.

The question presented by this appeal concerns the ownership of certain United States savings bonds, series E, or the value thereof. Said bonds were issued to and registered in the name of Alpheus J. Wheeler, only.

It appears from the record that Alpheus J. Wheeler of Fairview, Richland county, Montana, had conducted a mixed farming business and had accumulated considerable property, both real and personal. Sometime in the spring of 1947 he had been in and out of the hospital in Miles City, stopping at times with his half-brother, Howard S. Wheeler, the defendant herein, and his wife, Clara Wheeler. He carried his belongings in a suitcase and hand bag. Apparently sometime in the spring of 1947 he returned to the hospital in Miles City, suffering from a kidney disease, although there was no medical testimony whatever introduced in the proceeding. All the evidence in regard to the physical condition and occurrences appertaining to deceased was given by lay witnesses.

Prior to November 7, 1947, deceased had undergone two am-

putations upon one of his legs. It is the contention of the defendant, Howard S. Wheeler, that on or about November 7, 1947, while Howard and his wife were visiting Alpheus at the hospital in Miles City, and just before visiting time was up, a fellow railroader friend of Howard's, by the name of Alvin B. Tuelke, an ambulatory patient, came into the room and Howard introduced him to Alpheus; that while they were still talking Alpheus handed to Howard an envelope and said, "If I don't get well, this is for you," or words to that effect. The envelope contained United States savings bonds, series E, all registered in the name of said Alpheus J. Wheeler only, issued in the years 1945 and 1946, and in maturity denomination of two $1,000, two $200 and six $100, or a total maturity value of $3,000. Defendant contends that the transaction, being voluntary on Alpheus J. Wheeler's part, and while the donor was suffering from a disease from which he finally died, a gift *causa mortis* was consummated. The defendant further contends that upon the death of Alpheus, the title to the bonds passed to the defendant, Howard S. Wheeler, and that he became the sole owner thereof.

Plaintiff Axel Nelson, administrator, contends that United States Treasury savings bonds, series E, under the contract and regulations pertaining thereto cannot be transferred by a gift *causa mortis;* that the trial court erred in holding to the contrary; that it erred in holding that the decedent during his lifetime made a valid gift of the bonds and that it erred in failing to hold that if a gift was in fact attempted, same was revoked by the decedent's subsequent testamentary disposition of all his property. It is apparent that in no event would the title to the bonds pass until the death of Alpheus J. Wheeler.

The record shows that in decedent's deposit box there were other United States savings bonds, made out in the name of both Alpheus and Howard S. Wheeler; the defendant could not remember how many but they were issued in the years 1945 and 1946. During the latter part of 1947 and 1948 Alpheus J. Wheeler was again in and out of the hospital at Miles City and

he was a patient in the hospital at Billings, and in the hospital at Sidney.

On November 3, 1948, Alpheus J. Wheeler executed his last will in due testamentary form, nominating and appointing therein as his executor Axel Nelson, the plaintiff herein. Thereafter and on June 16, 1949, Alpheus J. Wheeler died. His will was admitted to probate by order of the court dated July 13, 1949, and letters testamentary issued to Axel Nelson on the same date. Thereafter Axel Nelson duly qualified as such executor and entered upon his duties as such executor and at all times since and now is the duly qualified and acting executor of the will and estate of Alpheus J. Wheeler, deceased.

On or about February 1, 1950, Axel Nelson, executor, discovered that United States savings bonds, series E, as described in his complaint and in the judgment entered therein, were in the possession of defendant Howard S. Wheeler. Said bonds were in the name of Alpheus J. Wheeler only. On or about the 9th day of February 1950 demand was made of Howard S. Wheeler for the possession of said bonds, but defendant refused to deliver them.

This suit was thereupon instituted by the executor to recover the bonds or the value thereof as a part of the assets of the estate. The trial of the issues had before the court without a jury resulted in a judgment for defendant, the court finding that decedent had made a valid and complete gift *causa mortis* of the bonds.

The record shows that a year after decedent is alleged to have given the bonds to defendant, decedent duly made, executed, declared and published his last will and testament wherein he provided for the disposition of *all* his property, as follows:

"I, Alpheus J. Wheeler of Fairview, Montana, being of sound mind and legally competent, make and publish my last will as follows:

"I give, devise and bequeath to my half-brother, Howard S. Wheeler, of Miles City, Montana, the sum of $100.00.

"I give, devise and bequeath to Clara Wheeler, wife of Howard S. Wheeler, of Miles City, Montana, the sum of $200.00.

"I give, devise and bequeath to May Wheeler of Fairview, Montana, the sum of $1000.00.

"I give, devise and bequeath to J. W. Biehl of Fairview, Montana, the sum of $300.00.

"I give, devise and bequeath to John Kaufman of Glendive, Montana, the sum of $500.00.

"I give, devise and bequeath to E. R. Poff and Wilma Poff, his wife, of Sidney, Montana, in equal shares or to the survivor thereof, all of my cattle and the increase or the proceeds therefrom which are branded O-V on the left shoulder, which cattle are on the Poff Ranch in Richland County, Montana.

"I give, devise and bequeath all the rest, residue and remainder of my property to the Montana Children's Home and Hospital at Helena, Montana.

"I nominate and appoint Axel Nelson of Sidney, Montana, the Executor of this Will to serve without bond at all times and he shall have full power and authority to sell, lease, exchange, mortgage, or otherwise handle or dispose of my property as I might have done if living, and full authority is given to execute such instruments as may be proper or required for any such purpose, and in the event of sale of real or personal property, the executor shall have full power to sell at public or private sale, with or without notice for cash or on terms and at such prices as he may determine without any order of any Court or Judge and without bond.

"I revoke all prior wills.

"Witness my hand and seal at Miles City, Montana, this 3rd day of November, 1948.

"Alpheus J. Wheeler (Seal)"

(Duly subscribed by two attesting witnesses.)

It is revealing to note that here the deceased made his solemn testamentary disposition of six specific bequests and then by his residuary clause devised and bequeathed all the rest, residue

and remainder of his property to the Montana Children's Home and Hospital.

At the time of making his last will Alpheus J. Wheeler was the legal and equitable owner of the bonds in question, as much so as he was owner of any other of his property. The mere fact, if it is a fact, that he gave the physical possession and custody of the bonds to the defendant did not alter his legal and equitable title and ownership. The defendant could not exercise any right of ownership in them; he was only the cutsodian thereof.

Apart from the foregoing, the ownership of these bonds turns upon the proper application of settled rules of the law of contracts. There is here a contract between the deceased and his government, by the terms of which the deceased, as registered owner, acquires the right to have the bonds paid only in accordance with the regulations under which the government issued them to him and reciprocally he is bound to dispose of his claim against the United States only as the regulations provide.

There is no question but that these bonds could have been reissued at any time during Alpheus' lifetime naming Howard S. Wheeler as beneficiary, or the bonds could have been issued to Howard S. Wheeler individually if such had been the wish of the registered owner thereof, and in this way the full title and ownership could have been conveyed to Howard S. Wheeler. The latter testified that while in possession of the bonds he noted before Alpheus' death that the bonds were issued in the name of Alpheus J. Wheeler only, but did not think it necessary to say anything to Alpheus about it. Howard took no steps to have the bonds reissued so as to conform with the requirements of the contract.

Alpheus J. Wheeler, being the registered owner of the bonds, was the legal and equitable owner thereof at all times until the instant of his death. Even if there were an attempted gift *causa mortis* on November 7, 1949, Alpheus J. Wheeler could at any time before his death revoke it. By his last will which he duly executed November 3, 1948, after making six

specific bequests, he devised and bequeathed all the rest, residue and remainder of his property.

These bonds were issued under authority of 31 U. S. C. A. ██ sec. 757c. The treasury regulations were promulgated under this authority and have the force and effect of federal law. United States v. Birdsall, 233 U. S. 223, 34 S. Ct. 512, 58 L. Ed. 930; United States v. Janowitz, 257 U. S. 42, 42 S. Ct. 40, 66 L. Ed. 120; Warren v. United States, 68 Ct. Cl. 634, certiorari denied 281 U. S. 739, 50 S. Ct. 346, 74 L. Ed. 1154. No state law can vary the terms of federal obligations or derogate from their full enforcibility. See Franklin Washington Trust Co. v. Beltram, 133 N. J. Eq. 11, 29 A. (2d) 854, 856; Irvine v. Marshall, 20 How. 558, 15 L. Ed. 994; Ruddy v. Rossi, 248 U. S. 104, 39 S. Ct. 46, 63 L. Ed. 148, 8 A. L. R. 843.

Our Federal Constitution gives to Congress the power to borrow money on the credit of the United States, U. S. Const. art. 1, sec. 8, cl. 2, and "To make all Laws which shall be necessary and proper for carrying into Execution" this power, U. S. Const. art. 1, sec. 8, cl. 18; and especially should we observe Article VI, clause 2, which provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof * * * shall be the supreme Law of the Land; and the Judges in every State shall be bound hereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." The supremacy of the federal law in such matters has been established by many decisions. Compare: Lemon v. Foulston, 169 Kan. 372, 219 Pac. (2d) 388; Franklin Washington Trust Co. v. Beltram, supra; Harvey v. Rackliffe, 141 Me. 169, 41 A. (2d) 455, 161 A. L. R. 296, and cases therein cited; In re Bartlett, D. C., 71 F. Supp. 514; United States v. Janowitz, 257 U. S. 42, 42 S. Ct. 40, 66 L. Ed. 120; Maryland Casualty Co. v. United States, 251 U. S. 342, 40 S. Ct. 155, 64 L. Ed. 297; 11 Am. Jur., Conflict of Laws, sec. 8, p. 306.

The federal treasury's regulations at the date and under ██ which the bonds in question were issued are the law of the case and such law is a part of the contract. These treasury

regulations are contained in circular 530, sixth revision, Code of Federal Regulations, Title 31, secs. 315.1 to 315.63, inclusive, issued under 55 Stat. 7, 31 U. S. C. A. sec. 757c. Section 315.2 provides in part: ''United States Savings Bonds are issued only in registered form. * * * The form of registration used must express the actual ownership of and interest in the bond and * * * will be considered as conclusive of such ownership and interest.'' The regulations further provide that the bonds are not transferable, may not be hypothecated or pledged and are payable only to the owner or owners named thereon, except in case of disability or death of the owner. (Sec. 315.11.) Upon the death of the owner, the bonds will be considered as belonging to his estate, and will be paid to the duly authorized representative of the estate or, upon his request, will be reissued in the names of the persons entitled to share in the estate, but in any event only in accordance with the provisions of the regulations. (Sec. 315.47.)

''Bonds of series E may be registered * * * (1) in the name of one person * * * (2) in the names of two * * * persons in the alternative as co-owners * * * (3) in the name of one * * * person, payable on death to one * * * other person * * *'' and not otherwise. (Sec. 315.4.)

It is apparent from the regulations and clearly the intention of the law that ''E'' savings bonds shall not be transferable except in strict compliance with the requirement of registration. Thus by following the requirements of registration a gift, a gift in trust, or a gift effective at death, may be made.

The non-transferability of the bonds was a security for both the registered owner and our government, and this court has no power to waive any requirement or to rewrite the contract. Compare: In re Estate of Wallace, 266 Ill. App. 500; In re Hartman's Estate, 44 Pa. Dist. & Co. 272; Saper v. Sussman, 185 Misc. 277, 56 N. Y. S. (2d) 377; In re Deyo's Estate, 180 Misc. 32, 42 N. Y. S. (2d) 379; Moore's Administrator v. Marshall, 302 Ky. 729, 196 S. W. (2d) 369, 168 A. L. R. 241.

To hold that a gift *causa mortis* of these bonds is valid would

require this court to set aside the federal law and substitute the state law. This we may not do under our oath, U. S. Const., Art. VI, cl. 3, and the supremacy clause of our Federal Constitution, Art. VI, cl. 2, supra, and because of the supremacy of federal law a state law or rule has no application to the contract consummated by the issuance of such bonds. Lemon v. Foulston, supra.

There is not an abrogation of any state law relative to inheritance or passing of title to property, but there is a necessity of the recognition of the supremacy of the federal law in a matter relating to the borrowing power of Congress, and the necessity of a uniform procedure relating to federal savings bonds in all states, and no state statute or rule of law may stand in the way of enforcing the applicable federal law embodied in the contract as made.

The regulations make clear the steps to be taken in establishing the right to the bonds or their proceeds through the regular administration of estates and the probate of wills. While gifts of other securities and property *causa mortis* are recognized as valid in many instances under proper proof under state law, the disposition of United States savings bonds must be administered under federal law. It seems quite clear that the law under which these bonds were issued makes registration the sole evidence of ownership with the one exception in the regulations, 31 Code Fed. Regs., sec. 315.47, supra, recognizing the formal procedures for the administration of estates. It necessarily follows, and we hold, that United States savings bonds, series E, are not subject to gift *causa mortis;* that Alpheus J. Wheeler was the owner thereof at the time of his death; and that his executor is entitled to their possession and custody under the terms of their registration. See Moore's Administrator v. Marshall, 302 Ky. 729, 196 S. W. (2d) 369, 168 A. L. R. 241. Compare: Fidelity Union Trust Co. v. Tezyk, 139 N. J. Eq. 316, 51 A. (2d) 105; Fidelity Union Trust Co. v. Tezyk, 140 N. J. Eq. 474, 55 A. (2d) 26, 173 A. L. R. 546; Weeks v. Johnson, Me., 82 A. (2d) 416; Lemon v. Foulston, supra; In re Owens' Estate,

177 Misc. 1006, 32 N. Y. S. (2d) 747, 750; In re Bartlett, D. C., 71 F. Supp. 514; In re Ballard's Estate, 161 Misc. 785, 293 N. Y. S. 31.

In a section of the regulations dealing with creditor's rights, bankruptcy, receivers of insolvents and divorce decrees, provision was made for the determination by judgment or decree of a court of competent jurisdiction for a transfer by operation of law. These provisions plainly contemplate proceedings involving the bankruptcy of the registered owner or assignments for the benefit of his creditors, and divorce decrees. An exception, however, was made which precluded any decree or determination of a court upon an action or proceeding instituted for the purpose of giving effect to an attempted transfer by the owner.

The judgment is reversed and the cause remanded with directions to enter judgment for Axel Nelson, executor of the estate of Alpheus J. Wheeler, deceased, in conformity with the prayer of his complaint.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES FREEBOURN and ANDERSON, concur.

MR. JUSTICE ANGSTMAN deeming himself disqualified took no part in the decision.