In the Matter of the Accounting of HENRY H. BEINFIELD et al., as Executors of SAMUEL AMOLS, Deceased.

Surrogate's Court, Kings County, March 17, 1944.

*Bachrach, Bachrach & Bisgyer* for Henry H. Beinfield and others, as executors, petitioners.

*A. Milton Miller,* claimant in person.

*Samuel Goldstein,* special guardian.

McGAREY, S. The issues presented in this proceeding to settle the final account of the executors are disposed of as follows:

Under paragraph " Fourth ", item 61, of his will, testator gave a specified amount to the Hebrew Teachers College of Jerusalem. At the time of the institution of the probate proceedings, accountants were informed of the existence of two organizations in Jerusalem bearing the same name. Upon subsequent investigation, it was definitely ascertained that there was only one organization of the name described in the will. This is confirmed by the special guardian of the infant legatees. Accordingly, the legacy is payable to the legatee named in the will.

At the time of testator's death in August, 1941, there were found, among other securities, in his safe deposit box, ten United States Savings Bonds, Series D, issued in August, 1939, and having an aggregate maturity value in August, 1949, of $10,000. Each of the bonds was issued in the name of the decedent " payable on death to " the claimant beneficiary. The court holds that these bonds form no part of the estate assets and that the " beneficiary form " of registration of the bonds is sufficient to vest title of the proceeds after death of the testator in the surviving claimant beneficiary (*Matter of Deyo,* 180 Misc. 32, and the authorities therein referred to).* The court is also

---

* See, also, *Matter of Kalina,* 184 Misc. 367.— [REP.

in full agreement with Surrogate FOLEY who stated in the *Matter of Deyo* (*supra*) that section 24 of the Personal Property Law (added by L. 1943, ch. 632, eff. April 19, 1943) and made applicable by the Legislature " to bonds heretofore and hereafter issued ", was not intended to effect a change in existing law but rather to remove any doubt resulting from the decision in *Deyo* v. *Adams* (178 Misc. 859) as to the rights of owners, co-owners and beneficiaries designated in nontransferable United States Savings Bonds. (Personal Property Law, § 24, Note of Law Revision Commission, N. Y. Legis. Doc., 1943, No. 65 [M]. See *In Re Willoughby's Will*, 45 N. Y. S. 2d 177, 180.) By reason of this determination the decree may provide that the portion of the estate taxes chargeable to the beneficiary of the savings bonds be deducted from the balance of the cash legacies to which the beneficiary is entitled under the provisions of the will.

In paragraph " Second " of his will, testator directed that he be interred in the Amols-Schutz mausoleum situated in the Mt. Neboh Cemetery in the " niche above that in which my beloved wife is interred," and gave, by paragraph " Third ", the sum of $500 to his executors " which sum they are to use in their discretion for the perpetual care of the Amols-Schutz mausoleum above described."

During his lifetime the testator acquired with his wife's brother the cemetery plot, the testator and his wife receiving an undivided one-third interest therein and his brother-in-law and wife the remaining undivided two-thirds interest. Upon the death of his brother-in-law, decedent caused to be erected on the plot a mausoleum at a cost of $8,500, half of which was paid for by the decedent and the other half contributed by the estate of his brother-in-law. The upkeep of the plot and mausoleum was on an annual basis and the charge for maintenance before and since testator's death has been borne equally both by the testator (and his estate) and the family of his deceased brother-in-law.

Accountants, having been advised by the cemetery association that the minimum amount required for perpetual care of the mausoleum and plot is $2,500, communicated such information to the family of testator's brother-in-law in the hope that they would agree to contribute one half of the required minimum. This they have refused to do on the assumption that their contribution for upkeep will be made by them as heretofore on an annual basis.

While there is no express authority in testator's will for the proposed expenditure in view of his general bequest for perpetual care, justification therefor may be found under section 216 and subdivision 3 of section 314 of the Surrogate's Court Act but only to a limited extent.

Under the circumstances presented herein, the court may not direct the payment of the *total* proposed expenditure out of this estate, even if it is satisfied as to the reasonableness thereof. (*Matter of Smallman,* 138 Misc. 889, 893; *Matter of Gavey,* 147 Misc. 332, 335; *Matter of Cohen,* 150 Misc. 17, 534, affd. 246 App. Div. 539, revd. on other grounds 270 N. Y. 383; *Matter of Burroughs,* 155 Misc. 237.)

In view of all of the facts and circumstances and the relationship of the parties and the acts of the testator in contributing one half of the cost of the construction of the mausoleum and the annual maintenance charges, the court will allow as a reasonable and proper funeral expense of the decedent the sum of $750 in addition to the legacy of $500 given by paragraph " Third " of the will. This total sum of $1,250 shall be paid by accountants to the cemetery association only in the event the association agrees in writing, to be filed with the court, to provide in consideration thereof, perpetual care of the Amols interests in the Amols-Schutz plot and mausoleum. Upon failure or refusal by the association to agree, within thirty days after notification by the accountants, to the aforementioned conditions prescribed by the court and the inability of the executors to otherwise provide for such perpetual care, the accountants will be limited to the payment of the sum of $500 provided for in paragraph " Third " of the will, which they shall pay over to the corporate executor which is authorized to use the interest of the fund and so much of the principal as may be necessary for the maintenance and upkeep of the mausoleum and plot on an annual-care basis and in the manner followed by the testator in his lifetime and by accountants after his death.

Submit decree, on notice, in accordance herewith.