EULOGIA BARRIOS, Plaintiff and Appellee, *v.* HEIRS OF MARCOS A. MANZANO, Defendants and Appellants.

No. 11300. Argued January 14, 1957.—Decided May 20, 1957.

---

*Eduardo Urrutia Martorell* for appellants. *Arturo Ortiz Toro* and *Manuel Abréu Castillo* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

The Superior Court, San Juan Part, entered judgment in an action for the recovery of property and other particulars, ordering the heirs of Dr. Marcos A. Manzano Soto, consisting of his children Miguel Manzano Arroyo, María Eugenia Manzano Cubarón, and María Antonia Manzano Vélez, to pay the sum of $14,389.69 plus interest, costs and $300 attorney's fees to Eulogia Barrios, plaintiff therein. An appeal was taken from that judgment which was dismissed, thereby becoming final and unappealable (*firme*).

Pursuant to an order for execution of judgment, the marshal after levying attachment took possession of several United States Savings Bonds of Series E, for the total value of $3,500 which were registered in the name of Dr. Marcos A. Manzano Soto.[1] On the date set for the public auction

---

[1] Pursuant to Circular 530 of the U. S. Treasury Department (31 C. F. R.) § 315.4 (*a*), the purchaser of bonds of Series E may register them only in the name of a sole owner, two co-owners, or one co-owner, and at the latter's death in the name of a designated beneficiary. This form of registration is considered as conclusive of such ownership and interest in the bond, § 315.2, except as otherwise provided in the Regulations. Examples: (*a*) conflicting claims as to ownership of the bond

of the bonds the defendants appeared alleging that those bonds were exempt from attachment and execution. By stipulation of the parties, the court suspended the auction and ordered the marshal in his capacity as legal representative of the defendant heirs, as stipulated, to endorse and collect the bonds in question and to retain the proceeds thereof until further orders.

The marshal attempted in vain to fulfill the order of the court. The local banks refused to cash the bonds alleging that they were not transferable, were subject to the Regulations of the United States Treasury, and exempt from attachment and execution of judgment.

Subsequently, in passing upon the motion for exemption of attachment and execution, the court entered a decision declaring that the aforesaid United States Savings Bonds were not exempt from the execution of judgment and held:

"In view of the foregoing and of what the court believes to be for the best interest of justice, the defendants are hereby ordered to appear with the Marshal of this Court at the corresponding bank and cash the bonds in question, depositing the proceeds thereof in the office of the clerk of this court, to be held at the disposal of the plaintiff."

The validity of such decision is attacked here on appeal.

■ Under our laws, the United States Savings Bonds are not exempt from execution. Section 249 of the Code of Civil Procedure, 1933 ed.; 32 L.P.R.A. § 1130.[2]

■ However, the loan contract existing between the bond purchasers and the United States Government is a fed-

---

will be recognized when established by valid judicial proceedings (§ 315.13); (b) during the lives of both co-owners the bond will be paid to either co-owner upon their request and without requiring the signature of the other co-owner; and upon payment to either co-owner the other person shall cease to have any interest in the bond. (§ 315.45(a).)

[2] It is not correct to affirm, as contended by appellant, that the Government bonds enjoy the same privilege as the proceeds of a life insurance policy insofar as their exemption from execution is concerned. Except for the statutory exemption, the proceeds of a life insurance policy payable to the executors, administrators or legal representatives of the insured, are liable for the debts of the deceased and subject to attachment and execution by his creditors. *Schluter* v. *Heirs of Díaz*, 41 P.R.R. 875.

eral contract governed by the federal regulations and laws. State laws are superseded by the provisions of the federal law and by the Regulations of the Treasury Department whenever they conflict with the latter. *Ex parte de Jesús*, 68 P.R.R. 646. In the *De Jesús* case we analyzed some of the provisions of § 315 of the Regulations enacted by the United States Secretary of the Treasury in connection with the bonds issued by the U. S. Government. We add now that under the provisions of § 315.47 of the Regulations, upon the death of an owner of a savings bond who was not survived by a co-owner or designated beneficiary, the bond will be considered as belonging to his estate and payable to his heirs. Therefore, at the death of Dr. Marcos A. Manzano Soto, the bonds registered in his name are payable to his heirs who, as we have said, are his children, Miguel Manzano Arroyo, María Eugenia Manzano Cubarón, and María Antonia Manzano Vélez.

 Although the action filed by Eulogia Barrios against the heirs of Dr. Manzano was for partition of common property and for collection of money for services rendered, the ownership of or interest in the bonds in question was not discussed therein, nor did the trial court make any pronouncement as to the ownership of those bonds. The judgment orders the defendant heirs to pay plaintiff a specific sum of money. Therefore, this case does not involve the payment of the amount of the bonds to a co-owner thereof, since there was no conflicting claims as to the ownership of or interest in said bonds between co-owners or between the registered owner and a designated beneficiary. On the contrary, the plaintiff is trying to execute her judgment in part by collecting the total proceeds of the bonds. With respect to the defendant heirs, she is simply a judgment creditor.

The right of a judgment creditor to collect his money in United States bonds is permitted and regulated by the Treasurer of the United States. To this effect, Circular No. 530 of February 13, 1945, 31 C.F.R. § 315, provides:

"315.13. Judicial proceedings (judgment creditors, trustees in bankruptcy, receivers of insolvents' estates and conflicting claimants). A claim against an owner or co-owner of a savings bond and conflicting claims as to ownership of or interest in such bond as between co-owners or the registered owner and a designated beneficiary, will be recognized when established by valid judicial proceedings and payment or reissue will be made, upon presentation and surrender of the bond, except as follows:

"(a) No such proceedings will be recognized if they would give effect to an attempted voluntary transfer inter vivos of the bond or would defeat or impair the rights of survivorship conferred by the regulations in this part upon a surviving co-owner or beneficiary.

"(b) A judgment creditor, a trustee in bankruptcy or a receiver of an insolvent's estate will have the right to payment (but not to reissue) and a judgment creditor will be limited to payment at the redemption value current thirty days after the termination of the judicial proceedings or current at the time the bond is received, whichever is smaller.

"(c) If a debtor, or bankrupt, or insolvent, is not the sole owner of the bond, payment will be made only to the extent of his interest therein, which must be determined by the court or otherwise validly established."

Construing the former regulations, the appellant contends that "the general principle whereby any judgment of a court would be recognized by the Treasurer of the United States, consists in that the judgment refers to conflicting claims between co-owners of any bond or obligation of the Federal government, between parties claiming ownership of or interest in such bonds, which thing is not in controversy in the case at bar."

This is not so. The regulations of the Treasurer of the United States do not have the limitation attributed by the appellant. Section 315.13 expressly recognizes the right of a judgment creditor to payment from the bonds registered in the name of the debtor. For the claim against an owner or co-owner of a bond to be recognized, pursuant to the provisions of § 315.13 of the aforesaid Regulations, it must

be established by valid judicial proceedings and payment will be made upon presentation and surrender of the bond, subject to the exceptions listed under the letters (*a*), (*b*) and (*c*) which insofar as the judgment creditor is concerned are: (1) No such proceedings will be recognized if they give effect to an attempted voluntary transfer inter vivos of the bond or would defeat or impair the rights of survivorship conferred by the regulations in this part upon a surviving co-owner or beneficiary; (2) the judgment creditor will have the right to payment but not to reissue, and he will be limited to payment at the redemption value current thirty days after the termination of the judicial proceedings or current at the time the bond is received, whichever is smaller; and (3) payment will only be made to the extent of the debtor's interest therein, which must be determined by the court or otherwise validly established.

The facts in this case do not fall under any of the three exceptions mentioned above.

The execution of the judgment rendered in favor of the plaintiff-appellee is not meant to give effect to an attempted *voluntary transfer* inter vivos of the bond, nor to defeat or impair the rights of survivorship conferred by the regulations upon a surviving co-owner or beneficiary.[3] We have already

---

[3] We agree that a more difficult problem is encountered when the judgment creditor tries to obtain payment of the bonds registered in the name of the debtor and of a co-owner, or in the name of the debtor, and in case of the latter's death, of a designated beneficiary. (See 32 Minn. L. Rev. 158 *et seq.*) We have already seen that § 315.13(*a*) provides that judicial proceedings will not be recognized if they will defeat or impair the rights of survivorship conferred by the regulations upon a surviving co-owner or beneficiary which are: Section 315.45(*e*) provides that if the owner of the bond dies without having presented and surrendered the bond for payment or reissue, payment will be made to the surviving beneficiary; and § 315.45(*c*) provides that if either co-owner dies without having presented and surrendered the bond for payment or reissue, payment will be made to the surviving co-owner.

However, § 315.13(*c*) provides that the creditor is entitled to payment to the extent of the interest of the debtor, bankrupt or insolvent in the bond. Which right is then granted by the regulations to the co-owner or surviving beneficiary against the creditors? So far as we know the

said that the bonds object of the execution are registered in the name of Dr. Marcos A. Manzano Soto alone. Therefore, there is no co-owner or surviving beneficiary with a right to or interest in the bonds. Nor has the lower court ordered that a reissue of the bonds in favor of the creditor be made, or that their payment be made to her, but it has merely ordered the heirs of Dr. Manzano Soto to cash the bonds and deposit the proceeds thereof in court at the disposal of said creditor. And finally, the interest of Dr. Manzano Soto in such bonds had no limitation, since as we have already said, he was the sole owner. Being a part of his hereditary estate, the proceeds of such bonds are subject to the execution of the judgment rendered in favor of the appellee.[4]

Our laws do not forbid it, nor is it in conflict with the Regulations of the United States Treasury. Contrariwise, the order appealed from finds support in the Regulations. Therefore, said order is not incorrect and it will be affirmed.

Mr. Justice Marrero did not participate herein.

---

courts have failed to give a categorical answer to this question. Although the right of the creditor has prevailed over that of the co-owner or beneficiary in almost all cases where the owner-debtor has been involved in a bankruptcy or a supplementary proceeding, the reasons adduced do not rest on the aforesaid § 315.13. See *Saper* v. *Sussman* (1945), 56 N.Y.S. 2d 377; *In re Wyche* (1943), 51 F. Supp. 825; *Morris Plan Industrial Bank* v. *Finn* (1945), 149 F. 2d 591; *In re Bartlett* (1947), 71 F. Supp. 514; *Iowa Methodist Hospital* v. *Long* (1944), 12 N. W. 2d 171. In other cases where creditors have been involved, it has been held that the interest of the surviving beneficiary cannot be superseded by the rights of the creditors of the hereditary estate of the owner of the bond. *In re Briley Estate* (1945), 21 So. 2d 595; *Matter of Hager* (1943), 45 N.Y.S. 2d 468. See, however, as an argument against it, Shelton's *"Creditor's Rights in War Savings Bonds,"* 18 Tenn. L. Rev. 269; *"Rights of Registered Co-Owners and Beneficiaries of United States War Savings Bonds,"* 52 Yale L. J. 917.

[4] In the case at bar the original order entered by the lower court was not in conflict with the regulations of the U. S. Treasury despite the opinion to the contrary held by the local banks. On the other hand, although there is nothing in said Regulations forbidding an indorsement order like the one in question herein such indorsement orders will be valid as long as they do not violate the aforesaid Regulations.